[No. 31599.   Department Two.   July 19, 1951.]

LORENZO BLANCO, *Appellant*, v. SUN RANCHES, INC., *Respondent*.[1]

[1]Reported in 234 P. (2d) 499.

*Velikanje & Velikanje* and *John S. Moore, Jr.,* for appellant.

*V. O. Nichoson* and *Gavin & Robinson,* for respondent.

HAMLEY, J.—Lorenzo Blanco brought this action against his employer, Sun Ranches, Inc., to recover damages for injuries sustained when his left hand was caught in the moving gear on a hop-picking and recleaning machine. The cause was tried to a jury. At the conclusion of plaintiff's case, the trial court sustained defendant's challenge to the sufficiency of the evidence and granted defendant's motion for dismissal with prejudice. Judgment was entered accordingly, and plaintiff has appealed.

The four questions presented by the assignments of error and respondent's answering brief are: (1) Is the machine in question a "factory" within the meaning of the factory

act? (2) Are the provisions of the factory act which purport to cover operations not connected with a factory valid? (3) Did appellant assume the risk as a matter of law? (4) Was appellant contributorily negligent as a matter of law?

Blanco was about seventy years old at the time of the accident. He was born in Mexico and attended schools there until he was twelve or thirteen years old. He has practically no ability to speak or understand the English language. He moved from Mexico to Texas in 1921, where he worked as a storekeeper. In April, 1943, he moved with his family to the Yakima valley and found employment as a laborer upon the hop ranches of the area.

During his first several years in the Yakima valley, Blanco performed no work in connection with the operation of hop-picking and recleaning machines. He had, however, observed these machines in operation each harvest season, and saw that they were operated by gears, chains, and pulleys which moved and were open and exposed. In 1947, Blanco went to work on respondent's farm. During the hop harvest of that year he worked as a sweeper around and about the hop-picking and recleaning machine on which he was injured the following year. In the 1947 season, however, Blanco was not required to perform the particular task in which he was engaged at the time of his 1948 injury, as described below.

The hop picker and recleaner is a stationary machine of standard design in general use in the Yakima valley. The machine itself, which is located in respondent's hop yard, is about eighty feet long and is covered by a shed roof. The hop vines are cut in the field and laid on racks or trailers and brought to an elevator at the front end of the hop-picking machine. The vines are then lifted from the racks and hooked onto grasper bars, which carry them through a series of picking fingers. The hop burrs and leaves, so removed from the vines, fall onto a conveyor belt and are carried to the recleaning mechanism. Here the remaining leaves and broken petals are removed.

The 1948 hop harvest at respondent's farm began on August 25th. On that day, respondent's foreman assigned Blanco to the job of sweeping up· the leaves and stems that fell upon the floor. Blanco was also, for the first time, given the additional duty of scraping off the leaves and stems that fell upon a steel platform on the recleaner. This steel platform was approximately six feet wide and eight feet long, and was located about eight feet above the floor. There was no interpreter present when the foreman directed Blanco to perform this task. The instructions were conveyed by gestures and the foreman's demonstration of how the work was to be performed.

For the purpose of cleaning off the steel platform, Blanco was given a stick, which he said was three feet long, and a portable folding ladder four feet high, which Blanco said he did not use. Unguarded, but readily observable, moving gears and chains were located adjacent to the platform which had to be cleaned. Blanco testified that he knew of the presence of these gears and chains, and knew that they were moving. Whether or not Blanco used the ladder, it was necessary for him to grasp the pipe framework of the machine with his left hand, while using the stick with his right hand to scrape the stems and leaves from the overhead platform.

This cleaning operation had to be performed about once every hour. On August 28, 1948, while engaged in this task, Blanco's gloved left hand came into contact with one of the gears and chains, causing the injuries which gave rise to this cause of action.

It is appellant's contention that the hop picker and recleaner is a "factory" within the meaning of § 1 of the factory act (Rem. Supp. 1943, § 7658), and that Sun Ranches, Inc., having failed to provide guards around the moving gears, violated the safety provisions of that act. If this contention were sustained, it would mean that respondent was negligent as a matter of law. It would also mean that respondent would be deprived of the defense of assumption of risk. *Depre v. Pacific Coast Forge Co.*, 151 Wash. 430,

276 Pac. 89. The trial court held, however, that the machine in question is not a "factory" within the meaning of that act.

The term "factory" is not defined in the factory act. In *DeHaas v. Cascade Frozen Foods*, 23 Wn. (2d) 754, 162 P. (2d) 284, however, this court held that a bean-cleaning machine, operated by a company engaged in the business of buying and freezing foods, was not a "factory" within the meaning of that act. The power-driven machine there in question was five feet wide, seven feet long, and five feet high. It was placed upon a stationary platform thirty feet wide and sixty feet long, the top of which was about four feet above the ground. In rejecting the contention that this operation constituted a factory, the court said:

"Appellant's next contention, that respondent is liable because it had not complied with the provisions of Rem. Rev. Stat., § 7658, known as the 'factory act,' is without foundation. The act applies only to machinery used in factories, mills, or workshops. Appellant was not engaged in work, then, in a factory, mill, or workshop and, for that reason, cannot claim protection under the act.

"Any extension of the provisions of the statute to work outside of the places now mentioned in the act is a prerogative of the legislature and not of the courts." (p. 761.)

Appellant argues that the hop-picking and recleaning machine here in question constitutes a more complete processing plant than the bean recleaner, and that the *DeHaas* case is therefore distinguishable. The hop-picking and recleaning machine performs the additional function of picking the hops from the vines. Appellant also states (although this is not supported by the record) that after the hops are cleaned they are transported by conveyor belt to other units, where the hops are dried and baled ready for market.

While the operation involved in the instant case is thus more complete than that involved in the *DeHaas* case, the two operations are alike, in that agricultural products are dealt with in their natural state without any processing which changes the character of the original product. We

do not believe the two cases can be distinguished on the basis suggested.

Appellant also argues that, if the *DeHaas* case be considered as controlling, then it ought to be overruled, as the court there did not adequately consider the facts and the authorities bearing upon the question. In support of this view, there is cited a broad definition of the term "factory," to be found in 55 C. J. S. 676, Manufacturers, § 1, and a number of decisions where the particular operation there under consideration was held to be a factory.

None of the cited cases involved farm machinery of any kind or character. The decision in seven of these cases was based upon particular statutory definitions of the term "factory" or "manufacturing establishment." The two cases cited by appellant which did not involve statutory definitions of the term are *Thomas v. Chicago Great Western R. Co.*, 112 Minn. 360, 128 N. W. 297, and *Casey v. Barber Asphalt Paving Co.*, 202 Fed. 1. In the *Thomas* case, it was held that an employee repairing a gas engine and pumping machinery in a detached building at a railroad yard was within the protection of the factory act. The court held that, although the engine and pumphouse were not actually a factory, they were in the same class. In the *Casey* case, it was held by the ninth circuit court of appeals that a mobile asphalt paving machine was within the provisions of the Washington factory act. The court held that it is not essential that machinery be housed in a building in order to constitute a "factory, mill or workshop" within the meaning of the statute.

No court decisions from other jurisdictions involving agricultural machinery fully comparable to a hop picker and recleaner have been called to our attention. It is worth noting, however, that the courts have quite uniformly held that particular kinds of farm machinery, or places on farms where machinery is utilized, are not "factories," "plants," or "manufacturing operations," within the meaning of these terms in the factory acts. See *Chapman v. Piechowski*, 153 Wis. 356, 141 N. W. 259 (portable steam-driven threshing

machine); *Groat v. Clausen,* 139 Neb. 689, 298 N. W. 563 (silage cutter); *Johnson v. Bear,* 225 Mo. App. 1097, 40 S. W. (2d) 481 (silage cutter); 96 A. L. R. 1351, 1354, annotation; 163 A. L. R. 447, 455, annotation. In Wisconsin, following the *Chapman* case, the "safe-place" statute was amended to include mechanically-powered agricultural machinery. *Tiemann v. May,* 235 Wis. 100, 292 N. W. 612.

In our own state, it has been held that work on a hay-baling machine is not within the purview of the industrial insurance law. *Barney v. Anderson,* 116 Wash. 352, 199 Pac. 452. The industrial insurance law defines the term "factories" as

" . . . undertakings in which the business of working at commodities is carried on with power-driven machinery, either in manufacture, repair or change, and shall include the premises, yard and plant of the concern, except when otherwise expressly stated." (Rem. Rev. Stat. (Sup.) § 7675 [P.P.C. § 709-1].)

The legislature of this state has held three regular sessions since issuance of our opinion in the *DeHaas* case, but has not seen fit to amend the statute for the purpose of including farm machinery. It is our conclusion that the *DeHaas* case should not be overruled. If a different result is desired, it should be accomplished by legislation. We regard that case as controlling here. The trial court did not err in ruling that the hop picker and recleaner involved in this case is not a "factory" within the meaning of the factory act.

Appellant also challenges the trial court's ruling that the provisions of the factory act which purport to cover operations not connected with a factory are invalid.

Section 1 of the factory act, as amended in 1943, reads in part as follows:

"Any person, firm, corporation or association operating a factory, mill or workshop, *or conducting any operation where machinery is used,* shall provide and maintain . . ." (Italics ours.) (Laws of 1943, ch. 17, § 1, p. 32; Rem. Supp. 1943, § 7658.)

Appellant took the position in the trial court that if the machine in question is not to be regarded as a factory, mill, or workshop, within the meaning of the statute, it is at least included within the clause "any operation where machinery is used." The trial court held, however, that the title of the act did not give notice that operations other than those which may be classified as factories were covered by the act, and that any statutory provisions applying to such additional operations were therefore unconstitutional under Art. II, § 19, of the state constitution. This constitutional provision reads:

"No bill shall embrace more than one subject, and that shall be expressed in the title."

The title of chapter 17, Laws of 1943, reads as follows:

"AN ACT relating to the protection of employees in factories where machinery is used, amending section 1 of chapter 37, Laws of 1903, as amended by section 1 of chapter 84, Laws of 1905, as amended by section 1 of chapter 205, Laws of 1907 (section 7658 of Remington's Revised Statutes)."

Although the legislature first enacted the factory act in 1903, it was not until the 1943 amendment that any effort was made to cover operations other than those conducted in factories, mills, or workshops. See § 1, chapter 37, Laws of 1903; § 1, chapter 84, Laws of 1905; § 1, chapter 205, Laws of 1907. In these three earlier enactments, the kind of operation included was "factory, mill or workshop *where* machinery is used." (Italics ours.) The titles of each of these prior enactments similarly referred to "factories, mills or workshops where machinery is used." But the 1943 amendment, which enlarges the scope of the act to "factory mill or workshop, *or* conducting any operation where machinery is used," uses a restricted title which refers only to "factories."

■ It is not necessary here to repeat the familiar principles to be applied in determining this constitutional question, as stated in such cases as *State ex rel. Toll Bridge Authority v. Yelle*, 32 Wn. (2d) 13, 200 P. (2d) 467, and *Gruen v. State Tax Commission*, 35 Wn. (2d) 1, 211 P. (2d) 651. Applying those principles, we are of the view that the

title of the 1943 act is a restrictive one, in the sense that it is expressly limited in scope to the protection of employees in *factories* where machinery is used. This being so, it necessarily follows that any provision of the act which purports to cover nonfactory operations is beyond the scope of the title and hence invalid. Thus the clause relied upon by appellant, "or conducting any operation where machinery is used," being clearly intended to cover operations not included under the term "factory, mill or workshop," must be held void. The trial court did not err in so ruling.

The trial court, having held that the factory act was not here applicable and that the defense of assumption of risk was therefore available to respondent, ruled that appellant had assumed the risk as a matter of law.

The injury occurred when appellant's hand was drawn into some unguarded gears and chains while appellant was engaged in his assigned task of cleaning an overhead platform. Appellant contended that respondent was negligent in failing to guard these gears and chains. There was substantial evidence in support of this view. In considering the correctness of the trial court's ruling as to assumption of risk, we must accordingly assume this to be a case where the injury was caused by defect brought about or permitted to exist by reason of the employer's negligence.

The applicable rule as to assumption of risk, as to dangers normally incident to the occupation, where the defect was due to the negligence of the employer, is stated as follows in *Gila Valley G. & N. R. Co. v. Hall*, 232 U. S. 94, 58 L. Ed. 521, 34 S. Ct. 229:

"In order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it." (p. 102.)

This statement is quoted with approval in *McPherson v. Twin Harbor Stevedoring & Tug Co.*, 139 Wash. 61, 245 Pac. 747; *Peterson v. Tacoma-Ashford Transit Co.*, 170 Wash.

594, 17 P. (2d) 35; and *Cummins v. Dufault,* 18 Wn. (2d) 274, 139 P. (2d) 308. See, also, *Rawlins v. Nelson, ante* p. 570, 231 P. (2d) 281.

With respect to extraordinary risks, the principles to be applied where the employer is negligent have not been so explicitly stated. In our opinion, however, the same rule governs. *Kahlstrom v. International Stevedoring Co.,* 141 Wash. 374, 250 Pac. 287, 256 Pac. 503; *Cummins v. Dufault, supra,* and cases there cited. It is therefore unnecessary to determine whether the risk in question was normally incident to the occupation or is to be classified as an extraordinary risk. See 3 Labatt's Master & Servant (2d ed.) 3189, § 1186a.

■ The evidence is undisputed that appellant knew of the unguarded moving gears and chains. As above indicated, however, it must also be shown that appellant knew that the unguarded moving gears and chains endangered his safety, or that such danger was so obvious that an ordinarily prudent person under the circumstances would have appreciated it. If this showing is sufficiently conclusive so that it can be said that reasonable minds may not differ, then the trial court may decide the question as a matter of law; otherwise not. *Pearson v. Federal Mining and Smelting Co.,* 42 Wash. 90, 84 Pac. 632; *Peterson v. Tacoma-Ashford Transit Co., supra.*

Neither Blanco nor any other witness testified that Blanco actually knew that his safety would be endangered while he was engaged in the process of cleaning off the overhead platform. The question thus comes down to this: Does the evidence show, with the required degree of conclusiveness, that the danger of suffering this particular injury was so obvious that an ordinarily prudent person under the circumstances would have appreciated it? We think not.

In cases where the employee is engaged in work which directs his attention to the danger confronting him, or is such that the very act of performing his task gives him notice of, and compels him to be aware of and appreciate, the danger, we have held, as a matter of law, that the employee had

assumed the risk of injury from such dangers. Examples of this are where the employee is engaged in feeding clothing to the rollers of a laundry mangle (*Bier v. Hosford*, 35 Wash. 544, 77 Pac. 867; *Daffron v. Majestic Laundry Co.*, 41 Wash. 65, 82 Pac. 1089; *Kranich v. Knapp*, 43 Wash. 85, 86 Pac. 207); sawing lumber or wood on a circular saw (*Snyder v. Lamb-Davis Lbr. Co.*, 64 Wash. 587, 117 Pac. 399); removing debris from uncovered and unguarded cogs (*Olson v. McMurray Cedar Lbr. Co.*, 9 Wash. 500, 37 Pac. 679); or where the employee's duties required him to repeatedly pass under an unguarded revolving shaft (*Brown v. Tabor Mill Co.*, 22 Wash. 317, 60 Pac. 1126).

However, in the case before us, appellant's duties did not require him to work on the gears, nor was his work of the type which necessarily compelled or drew his attention to the danger nearby. On the contrary, appellant's duties required him to grasp, with his left hand, the upright in a position near the gears while he stretched in another direction towards the platform, where with his right hand he engaged in brushing leaves and stems from the platform. While so engrossed, and while his attention and efforts were so directed, his gloved left hand was inadvertently drawn between the gears. It seems to us that the risk of being injured in this fashion was not so obvious and patent that we can say that appellant assumed the risk as a matter of law. See *Hoff v. Japanese-American Fertilizer & Fisheries Co.*, 48 Wash. 581, 94 Pac. 109.

Other factors which are entitled to consideration are appellant's limited experience, his age, and the fact that he could not understand English. Because of this latter handicap, he was given his instructions by gesture and demonstration. Whether he fully understood these instructions, is a matter of some conjecture. He had been performing this particular task for only three days prior to the accident, and then only once an hour. His perception, co-ordination, and ability to appreciate danger may also have been affected by his age.

■ The test to be applied makes reference to an "ordinarily prudent person under the circumstances." Nevertheless, we think that it is proper to take into account the actual capacity of the particular workman to understand and appreciate danger, in so far as the employer is aware of that actual capacity. *Williams v. Ballard Lbr. Co.*, 41 Wash. 338, 83 Pac. 323. It is recognized, of course, that where the workman is experienced in his work and has been repeatedly warned of the danger, mere inability to understand English does not excuse failure to appreciate the danger. *Vianello v. Washington Iron Works Co.*, 55 Wash. 552, 104 Pac. 784.

Still another factor which is entitled to consideration is the fact that appellant was not warned that if he placed his hand near these gears there was danger that it might be drawn into the sprocket. This may be excusable on the theory that there is no duty to warn against an obvious danger. *Cummins v. Dufault, supra,* and cases there cited. On the other hand, it might be regarded by the jury as an indication that respondent's foreman did not himself realize the danger. This latter possibility gains substance from the fact that the foreman apparently expected appellant to place his left hand on a supporting pipe not far from the gears when he performed the cleaning operation.

■ It is our conclusion that, in view of all of these considerations bearing upon the question, each of which finds some support in the evidence, the question of whether appellant should have appreciated the danger of his hand being drawn into the sprocket of the moving gear, is one of fact concerning which reasonable minds might differ. It is therefore a question which should have been left to the jury, and the trial court erred in deciding it as a matter of law.

■ Respondent also contends that appellant was guilty of contributory negligence as a matter of law. The trial court did not so rule. Our examination of the record convinces us that the contributory negligence of appellant was not so conclusively established that the judgment of dis-

missal should be sustained on that ground alone. In our opinion, this was also a question for the jury.

The judgment is reversed and a new trial granted.

SCHWELLENBACH, C. J., MALLERY, GRADY, and WEAVER, JJ., concur.

August 29, 1951. Petition for rehearing denied.

## ON MOTION RESPECTING COSTS.

### [September 28, 1951.]

PER CURIAM.—A new trial was granted in this case, but the opinion contained no reference to costs. Respondent now invites the court to exercise its discretion in accordance with that part of Rule on Appeal 55, 34A Wn. (2d) 58, which reads as follows:

"And when the judgment is reversed and a new trial ordered, the court will, in its discretion, direct that costs of the prevailing party shall abide the result of the action"; and has moved for an order directing that the costs abide the result of the action.

When a new trial is granted, the court exercises its discretion with regard to costs, and, unless we state in the opinion that costs will abide the result of the action, it is understood that they will be taxed in favor of the appellant. To secure the relief sought by its motion, the respondent must convince this court that we abused our discretion.

We are convinced that our discretion was properly exercised in the first instance, and the motion is denied.