[No. 21228-5-II.    Division Two.    February 6, 1998.]

VALLAN T. CHARRON, ET AL., *Appellants,* v. BRUCE
MIYAHARA, *as Secretary of the Department of Health,
Respondent.*

*Wallace M. Rudolph*, for appellants.

*Christine O. Gregoire, Attorney General*, and *Laura L. Wulf, Assistant*, for respondent.

HUNT, J. — Appellant Vallan Charron is a member of

Citizens for Affordable Denture Care. Appellant Gary Fox is a member of the Board of Denture Technology. They appeal dismissal of their constitutional challenges to portions of LAWS OF 1995, ch. 198 and ch. 336, which they claim violate the single subject and title specificity provisions of the Washington State Constitution, art. II, § 19. As to their challenge to SSB 5308, we reverse. As to their challenge to SSB 5365, we affirm.

## FACTS

### A. Legislative History

In 1994, the voters passed Initiative 607, allowing persons other than dentists to make and sell dentures. The initiative also created a new regulatory Board of Denture Technology (the Board);[1] added a new chapter governing "denturists" (RCW 18.30); and amended several sections of the Uniform Disciplinary Act (UDA) to include denturists (RCW 18.130). *See* LAWS OF 1995, ch. 1.

In April 1995 the Legislature unanimously passed two bills amending Initiative 607—Substitute Senate Bills (SSB) 5308 and 5365 (codified as LAWS OF 1995, ch. 198 and ch. 336, respectively). SSB 5308 was entitled "AN ACT Relating to the use of examinations in the credentialing of health professionals; amending RCW 18.25.030, 18.32.050, 18.34.080, 18.29.021, 18.29.120, 18.53.060, 18.54.070, 18.64A.020, 18.74.035, 18.83.070, 18.83.072, 18.92.030, 18.92.100, 18.108.030, 18,108.050, 18.108.073, 18.30.020, 18.30.080, 18.30.090, 18.30.100, 18.30.110, 18.30.130, and 18.30.140; reenacting and amending RCW 18.74.023; adding a new section to chapter 18.130 RCW; repealing RCW 18.30.070; and declaring an emergency." LAWS OF 1995, ch. 198. This bill transferred much of the new Board's regulatory authority to the Secretary of the State Department of Health (the Secretary).

---

[1]The Board comprises seven members appointed by the Secretary, including: (a) four members who "must be denturists licensed under [the] chapter"; (b) two members who "shall be selected from persons who are not affiliated with any health care profession or facility"; and (c) one member who "must be a dentist licensed in the state of Washington." RCW 18.30.050(1).

SSB 5365 was entitled "AN ACT Relating to the uniform disciplinary act; amending" several sections of RCW 18.130; adding new sections to RCW 18.30 and RCW 18.130, and "declaring an emergency." LAWS OF 1995, ch. 336. This bill substituted the Secretary for the Board as the disciplinary authority for denturists.

The Governor signed both bills into law in May 1995.

### B. Procedural History

Charron and Fox filed an original action in the Washington State Supreme Court against the Secretary, Bruce Miyahara, challenging the constitutionality of the two legislative acts. They argued the acts were adopted in violation of Const. art. II, §§ 19, 38, and 41.[2] Pursuant to RAP 16.2(d) a Supreme Court commissioner transferred the action to Thurston County Superior Court, which rejected the constitutional challenges and dismissed the claims.

Charron and Fox appealed to the Supreme Court. A court commissioner granted, in part, the Secretary's RAP 18.14 motion on the merits, affirming the trial court's ruling that the two acts comply with Const. art. II, § 38 and Const. art. II, § 41. Charron and Fox did not move to modify; thus the commissioner's affirmance remains unchallenged. The Supreme Court transferred the remaining issue to this court: whether the bills were adopted in violation of Const. art. II, § 19.

### ANALYSIS

■ ■ We begin by noting the well-settled rule that statutes are "presumed constitutional, and the challenger bears a heavy burden to overcome that presumption." *State Fin. Comm. v. O'Brien*, 105 Wn.2d 78, 80, 711 P.2d 993 (1986). "[A]ny reasonable doubts are resolved in favor of

---

[2]Const. art. II, § 19 provides that no bill shall embrace more than one subject, which will be expressed in the title; § 38 prohibits amendments to any bill that change the scope and object of the bill; § 41 allows amendment of initiatives for two years after adoption only by legislative supermajority.

constitutionality." *Washington Fed'n of State Employees v. State*, 127 Wn.2d 544, 556, 901 P.2d 1028 (1995). The titles of the challenged bills should be "liberally construed so as to sustain the validity of a legislative enactment." *State v. Grisby*, 97 Wn.2d 493, 498, 647 P.2d 6 (1982) (citing *Water Dist. No. 105 v. State*, 79 Wn. 2d 337, 485 P.2d 66 (1971)).

Const. art. II, § 19 contains two prohibitions regulating the title of bills:

> (1) No bill shall embrace more than one subject (the purpose of which is to avoid hodgepodge and 'logrolling' legislation); and (2) no bill shall have a subject which is not expressed in the title (the purpose of which is to notify the members of the legislature and the public of the subject matter of the proposed legislation).

*Power, Inc. v. Huntley*, 39 Wn.2d 191, 198, 235 P.2d 173 (1951). We first address the second prohibition, which is dispositive.

## A. Subject Expressed in the Title

■ ■ On review, this court "examines the body of the act to determine whether the title reflects the subject matter of the act." *Federation of State Employees*, 127 Wn.2d at 556 (citing *State ex rel. Washington Toll Bridge Auth. v. Yelle*, 32 Wn.2d 13, 23, 200 P.2d 467 (1948)).

> [T]he title of an act need not be an index to the contents of the legislation that follows, nor need it express in detail every phase of the subject which is dealt with by the enactment . . . it is sufficient if the title gives such notice as should reasonably *lead to an inquiry into the body of the act* itself, or *indicates, to an inquiring mind, the scope and purpose of the law.*

*Yelle*, 32 Wn.2d at 25-26 (emphasis added); *See also State v. Broadaway*, 133 Wn.2d 118, 125, 942 P.2d 363 (1997).

There are two classes of legislative act titles—general and restrictive. As discussed below, the title of SSB 5308 is restrictive; whereas the title of SSB 5365 is general.

## 1. SSB 5308 — Examinations and Credentialing Bill/ Restrictive Title

> ■ A restrictive title "is one where a particular part or branch of a subject is carved out and selected as the subject of the legislation." . . . A restrictive title is "narrow," as opposed to [a general title which is] broad. . . . It is of specific rather than generic import. . . . A restrictive title expressly limits the scope of the act to that expressed in the title.

*Broadaway*, 133 Wn.2d at 127 (citations omitted). In *Broadaway*, the Washington Supreme Court recently reviewed the legislative title of Initiative 159, "An Act Relating to increasing penalties for armed crimes . . . ." *Broadaway*, 133 Wn.2d at 124; LAWS OF 1995, ch. 129. The court held that the legislative title of Initiative 159 was restrictive rather than general in that it "carves out an area of criminal offenses, *armed* crime, and limits its scope to increasing penalties for armed crime." *Broadaway*, 133 Wn.2d at 127-28 (emphasis added).

Similarly, the title of SSB 5308 is restrictive. SSB 5308 is entitled "AN ACT Relating to the use of examinations in the credentialing of health professionals . . . ." It carves out a specific area, namely credentialing of health professionals, and further limits its scope to the *use of examinations* in credentialing.[3]

---

[3]In *Broadaway*, 133 Wn.2d at 127-28 n.2, the court noted:

The following titles have been held to be restrictive: "Shall criminals who are convicted of 'most serious offenses' on three occasions be sentenced to life in prison without parole?" *State v. Thorne*, 129 Wn.2d 736, 757, 921 P.2d 514 (1996). "An act relating to the acquisition of property by public agencies . . . ." *Daviscourt v. Peistrup*, 40 Wn. App. 433, 437, 698 P.2d 1093 (1985). "An act relating to the protection of employees in factories where machinery is used." *Blanco v. Sun Ranches*, 38 Wn.2d 894, 901, 234 P.2d 499, 235 P.2d 830 (1951). "An act relating to local improvements in cities and towns . . . ." *Cory v. Nethery*, 19 Wn.2d 326, 329-31, 142 P.2d 488 (1943). "An act relating to the rights and disabilities of aliens with respect to land . . . ." *De Cano v. State*, 7 Wn.2d 613, 623, 110 P.2d 627 (1941). "An act relating to the venue of civil actions in justice courts." *National Ass'n of Creditors v. Brown*, 147 Wash. 1, 7, 264 P. 1005 (1928). "An act creating and providing for the enforcement of liens for labor and material." *Armour & Co. v. Western Constr. Co.*, 36 Wash. 529, 537, 78 P. 1106 (1905). "An act giving workmen's compensation

If a legislative title is restrictive, "it will not be regarded so liberally, and provisions which are not *fairly within* such restricted title will not be given force." *Yelle*, 32 Wn.2d at 26 (citations omitted) (emphasis added). "[T]he body of the act must be confined to the particular portion of the subject which is expressed in the limited title. The courts cannot enlarge the scope of the title." *Gruen v. State Tax Comm'n*, 35 Wn.2d 1, 23, 211 P.2d 651 (1949), *overruled on other grounds by State ex rel. Washington State Fin. Comm. v. Martin*, 62 Wn.2d 645, 384 P.2d 833 (1963).

Charron and Fox challenge sections 18 through 25 of SSB 5308. We hold that the majority of these provisions do not fall "fairly within" the restrictive title.

a. *Sections 18 and 20 through 24; Substitution of Secretary for the Board*

Section 18 and sections 20 through 24 of SSB 5308 simply eliminate the Board's powers and transfer them to the Secretary.[4] Several of these powers are unrelated to examinations, for example, setting fees and license renewal procedures. Charron and Fox argue that the bill's title did not give notice that the Board's powers, newly established by voter initiative, were being extinguished and transferred to the Secretary, whose powers were thereby expanded.

We agree and hold that sections of the bill reallocating authority from the Board to the Secretary are not "fairly within" the title's subject: "the use of examination in credentialing . . . ." *See Yelle*, 32 Wn.2d at 27-28 ("the term 'ferry connections' . . . is not sufficient to put a reasonably intelligent person on notice that the powers of the

---

benefits to persons engaged in hazardous and extrahazardous occupations in charitable institutions." *Swedish Hosp. v. Department of Labor & Indus.*, 26 Wn.2d 819, 830-31, 176 P.2d 429 (1947).

[4]For example, Section 22 provides as follows:

**Sec. 22.** RCW 18.30.110 and 1995 c 1 s 12 (Initiative Measure No. 607) are each amended to read as follows:

The department shall charge and collect the fees established by the ((board)) secretary. Fees collected shall be placed in the health professions account under RCW 43.70.320.

[TBA] have purportedly become so enlarged, beyond the limited powers it formerly possessed . . . .").

Although the Secretary already possessed authority under RCW 18.29.120 and RCW 18.108.073 to set and administer exams and licensing standards for dental hygienists and massage practitioners, it never before had such authority over denturists.[5] Nothing in the title suggests the bill reallocates the relative powers of the Board and the Secretary.[6] Although it is reasonable that a bill addressing the *use* of examinations in credentialing health professionals would *name* the body that is to administer and regulate those exams, it does not follow that a bill so titled would *remove* an existing examining body, i.e., the Board, and shift power elsewhere.[7] The title does not give notice "or indicate[ ], to an inquiring mind the *scope and*

---

[5]Similarly in *Yelle*, the TBA had never before had authority over the operation or purchase of ferries. Because the Secretary already possessed power to license and administer exams to a broad category of health care professionals, it could be argued that expansion of the Secretary's power here is not as great as expansion of the TBA's power in *Yelle*. Additionally, sections challenged here amend an act that already addressed examinations for other health practitioners, whereas in *Yelle*, the amended act did not previously address ferry operations. We are not persuaded by such differentiation.

[6]*See State ex rel. Jones v. Charboneau's*, 27 Wn. App. 5, 9, 615 P.2d 1321 (1980) ("A ballot title which refers only to places selling or exhibiting "obscene films" and "obscene publications" when the body of the initiative includes places of prostitution, illegal gambling, fighting and opium smoking does not meet the constitutional requirement that the title express the subject of the bill or initiative."), *overruled on other grounds by Federation of State Employees*, 127 Wn.2d at 544; *Swedish Hosp. v. Department of Labor & Indus.*, 26 Wn.2d 819, 831-32, 176 P.2d 429 (1947) (where an act's restrictive title referred only to "charitable institutions," the act's provisions concerning nonprofit organizations, which were distinctively different from charitable organizations, can not be given force). And in *Blanco*, the court stated:

> the title of the 1943 act is a restrictive one, in the sense that it is expressly limited in scope to the protection of employees in factories where machinery is used. This being so, it necessarily follows that any provision of the act which purports to cover non-factory operations is beyond the scope of the title and hence invalid. Thus the clause relied upon by appellant, 'or conducting any operation where machinery is used,' being clearly intended to cover operations not included under the term 'factory, mill or workshop,' must be held void . . . .

*Blanco v. Sun Ranches*, 38 Wn.2d 894, 901-02, 234 P.2d 499, 235 P.2d 830 (1951).

[7]Notice of such power shift is especially critical in legislation proposing such drastic change in a governing board specifically created by recent voter-initiative to oversee denturists. If the people of the State of Washington had wanted the

*purpose* of the law." *Yelle*, 32 Wn.2d at 26 (citations omitted) (emphasis added).

b. *Section 19 and 25; Specific Powers of Board and Secretary*

Section 25 repeals former RCW 18.30.070 (LAWS OF 1995, ch. 1 § 8), which addressed certain powers of the Board. Section 19[8] essentially incorporates the language from former RCW 18.30.070 into RCW 18.30.080, the section addressing duties of the Secretary pertaining to denturists. Section 19 thus greatly expands the powers of the Secretary, giving him authority: to determine qualifications of persons applying for a license (subsection 1); to determine and administer examination requirements (subsection 2); to adopt rules and hire staff to administer the entire chapter (subsections 3 and 10); to set examination, licensing, and renewal fees (subsection 4); to designate appropri-

---

Secretary to administer exams for use in accrediting denturists, they could have so specified. Instead, they enacted a new Board of Denturists to perform this function.

[8]Section 19 reads as follows:

RCW 18.30.080 and 1995 c 1 s 9 (Initiative Measure No. 607) are each amended to read as follows:

The secretary shall:

(1) In consultation with the board, determine the qualifications of persons applying for licensure under this chapter;

(2) In consultation with the board, prescribe, administer, and determine the *requirements for examinations* under this chapter and establish a passing grade for licensure under this chapter;

(3) In consultation with the boards, adopt rules under chapter 34.05 RCW to carry out the provisions of this chapter;

(4) In consultation with the board, set all licensure, examination, and renewal fees in accordance with RCW 43.70.250;

(5) Evaluate and designate those schools from which graduation will be accepted as proof of an applicant's completion of course work requirements for licensure;

(6) Act as the disciplining authority under this chapter in accordance with the uniform disciplinary act, chapter 18.130 RCW, which governs unlicensed practice, the issuance and denial of licenses, and the disciplining of license holders under this chapter;

(Emphasis added.)

ate educational facilities (subsection 5); and to act as disciplinary authority (subsection 6). Additionally, subsection 11 rephrases the initiative's subsection to allow licenses for applicants from states "with equivalent licensing standards."

Because they do not address "examinations," the subject expressed in the bill's title, subsections 3, 5, 6, and 10 cannot be deemed "fairly within" the title of SSB 5308. Arguably subsection 1 could be deemed within the title, because passing an examination may be required of a person applying for a license. Similarly, subsection 11, granting a license to an out-of-state practitioner without an exam, might be deemed fairly within the title. As to subsection 4, the setting of *examination* fees is within the title, but setting renewal and licensing fees is not.

Further, although the title of SSB 5308 specifies repeal of RCW 18.30.070, it does not also indicate that, in effect, it re-enacts the repealed statute in another section of the chapter, thereby transferring to the Secretary, many powers originally conferred on the Board.

c. *Result*

We may strike any section containing a subject not expressed in the title "without affecting those matters covered by the title unless they are so inextricably intertwined." *Huntley*, 39 Wn.2d at 198.

> The rule is that, if a portion of a statute is found to be invalid, the entire statute will not be struck down unless the invalid portion is unseverable and it cannot be reasonably believed that the legislature would have passed the one without the other, or unless the elimination of the invalid part would render the remainder of the act incapable of accomplishing the legislative purpose.

*State ex rel. Distilled Spirits Inst., Inc. v. Kinnear*, 80 Wn.2d 175, 176-77, 492 P.2d 1012 (1972) (citations omitted).

We hold SSB 3508 sections 18 through 24 invalid to the extent that they extinguish the Board's power and transfer it to the Secretary. Section 19 is also invalid to the extent

that it grants non-examination-related powers to the Secretary. Section 25 is arguably within the subject of the title. But if we were to strike only those portions we find invalid, the remaining legislation would be inconsistent within itself and "incapable of accomplishing the legislative purpose." *Kinnear*, 80 Wn.2d at 177.[9]

The unchallenged sections of SSB 5308 are easily severable from those challenged by Charron and Fox. The other sections deal primarily with examination procedures for other professions and do not address denturists. The Legislature likely would have enacted these other sections even without addressing denturists. *See Broadaway*, 133 Wn.2d at 128 ("We presume the Legislature would have enacted the remainder of the Act even if some portions are invalid because their subject matter does not fall within the Act's title."). We therefore strike as unconstitutional only Sections 18 through 25 and leave the remainder of the act intact.

### 2. SSB 5365 — Disciplinary Bill/General Title

In *Federation of State Employees*, the court found the following initiative title to be general: "Shall campaign contributions be limited; public funding of state and local campaigns be prohibited; and campaign related activities be restricted?" The title did not specify campaign contribution limitations or restrictions or how they would be implemented. *Federation of State Employees*, 127 Wn.2d at 548-49, 557. The title is broad and of "generic import." *Broadaway*, 133 Wn.2d at 127.

■■ ■■ Similarly, we find the title of SSB 5365 to be general. SSB 5365 was entitled "AN ACT Relating to the uniform disciplinary act . . . ." It does not specify what

---

[9]For example, the responsibilities of the Board were revoked by section 25 and granted to the Secretary in section 19. If we strike certain responsibilities granted to the Secretary in section 19 and uphold the revocation of Section 25, there is no longer a body assigned to carry out the stricken duties. Further, if we uphold parts of Section 19 and strike the transfer of power to the Secretary in all other sections, the result is a happenstance melange of delegated authority, with the two bodies sometimes overseeing the same area. It is unlikely the Legislature would have intended such a result.

subjects contained in the UDA will be affected or how. *Federation of State Employees*, 127 Wn.2d at 557. The title is broadly worded and of general or "generic import." *Broadaway*, 133 Wn.2d at 127. "If the title is general and comprehensive, it will be given a liberal construction; in such case, no elaborate statement of the subject of the act is necessary, and a few well-chosen words suggestive of the general subject treated is all that is required." *Yelle*, 32 Wn.2d at 26. The subject matter of the bill must merely be "germane" to the general subject stated in the title. *Gruen*, 35 Wn.2d at 22.

Charron and Fox challenge sections 2 and 3 of SSB 5365.[10] Section 2 adds denturists to the list of professions and associations over which the Secretary has authority and removes that same authority from the Board. Section 2 also adds a subsection requiring these listed bodies to adopt procedures to ensure consistent application of the UDA. Section 3 amends RCW 18.30, gives the Secretary disciplinary authority under the chapter, and specifies that the UDA shall govern issuance and denial of licenses and other disciplinary matters. LAWS OF 1995, ch. 336.

SSB 5365's title gives notice that the bill addresses disci-

---

[10]Section 2 provides, in part:

> **Sec. 2.** RCW· 18.130.040 and 1995 c 1 s 19 (Initiative Measure No. 607) . . . are each reenacted and amended to read as follows:

> . . . .

> (2)(a) The secretary has authority under this chapter in relation to the following professions:

> . . . .

> (xvii) Denturists licensed under chapter 18.30 RCW.

Section 3 provides as follows:

> NEW SECTION. **Sec. 3.** A new section is added to chapter 18.30 RCW to read as follows:

> The uniform disciplinary act, chapter 18.130 RCW, shall govern the issuance and denial of licenses, unauthorized practice, and the discipline of persons licensed under this chapter. The secretary shall be the disciplinary authority under this chapter.

pline of health care professionals. Although, as in SSB 5308, power is shifted from the Board to the Secretary, we cannot say that a shift in the disciplinary authority is not germane to the title of SSB 5365. Sections revoking or granting disciplinary authority are germane to the subject of the UDA. We therefore uphold the constitutionality of SSB 5365.

### B. Single Subject Rule

We now return to the first prohibition of Const. art. II, § 19, that "no bill shall embrace more than one subject." Having held SSB 5308 unconstitutional on other grounds, we need not address the effect of this prohibition on that bill. But to sustain the constitutionality of SSB 5365, we must further determine whether it contains only one subject.

A bill's general subject may contain several subsubjects or subdivisions without violating the Washington Constitution. *Grisby*, 97 Wn.2d at 498.[11] "All that is required is that there be some 'rational unity' between the general subject and the incidental subdivisions." *Grisby*, 97 Wn.2d at 498 (quoting *Kueckelhan v. Federal Old Line Ins. Co.*, 69 Wn.2d 392, 403, 418 P.2d 443 (1966)).

For example, in *State v. Waggoner*, 80 Wn.2d 7, 490 P.2d 1308 (1971), the Washington Supreme Court found that "criminal law" was the single subject embraced in a bill entitled "AN ACT Relating to crimes and criminal proce-

---

[11]*Grisby* challenged a subsection of Laws of 1977, 1st Sess., ch. 206, entitled "AN ACT Relating to the Death Penalty . . . ." The challenged subsection provided that no person "shall be placed in legal jeopardy" for using reasonable force to protect him/herself or others. *Grisby*, 97 Wn.2d at 498. That subsection also provided for indemnification or reimbursement from the State to any person investigated or prosecuted who was later adjudged to have legally acted in self-defense. The challenged subsection neither mentioned the death penalty, nor was limited to cases where the death penalty was a potential sentence. But the court found a "rational unity" between the challenged subsection and the broad subject of the death penalty. The court reasoned that a crime normally warranting the death penalty, but committed in self defense, would be included within the terms of the challenged subsection, and that connection was "sufficient to meet the test of 'rational unity.' " *Grisby*, 97 Wn.2d at 498-99.

dures." *Waggoner*, 80 Wn.2d at 8. The bill included sections designed to "(1) increase confidentiality and reliability of criminal records, (2) reduce the penalties for crimes involving . . . marijuana, and (3) establish new crimes involving [sale and] distribution of erotic materials to minors." *Waggoner*, 80 Wn.2d at 9; Laws of 1969, Ex. Sess., ch. 256. The court held that "a bill may properly contain one broad subject embracing many sub-subjects or subdivisions," and that the broad subject of "criminal law" properly embraced these specific subdivisions. *Waggoner*, 80 Wn.2d at 9 (citations omitted).

Challenged sections 2 and 3 of SSB 5365 bear a "rational unity" to the general subject of the bill, namely, amendment of the UDA. Both sections address application of the UDA's standards. Section 3 amends RCW 18.30, the denturist chapter, but the title specifically states that the act amends RCW 18.30. Part of section 3 addresses something other than discipline: It states, inter alia, that the UDA shall govern issuance and denial of licenses. But whether a person has been or should be disciplined can be rationally related to the issuance or denial of a license. Further, because the subject matter of the title is so broad, we cannot say that licensing is a constitutionally impermissible second subject, particularly in light of the presumed constitutionality of statutes. *See O'Brien*, 105 Wn.2d at 80.

## CONCLUSION

We reverse in part and affirm in part. We strike sections 18 through 25 as unconstitutionally outside the scope of SSB 5308's title; this holding thus operates to restore Initiative 607's original delegation of power over denturists to the Board of Denture Technology. We affirm SSB 5365 and uphold its constitutionality.

SEINFELD and ARMSTRONG, JJ., concur.