942 P.2d 363 (1997)
133 Wash.2d 118
STATE of Washington, Respondent,
v.
Nathaniel R. BROADAWAY, Appellant.
No. 64654-6.
Supreme Court of Washington, En Banc.
Argued February 26, 1997.
Decided August 21, 1997.
*365 Nielsen, Broman & Associates, Eric Nielsen, Eric Broman and Jonathan T. Stier, Seattle, for appellant.
Jim Krider, Snohomish County Prosecutor and Aaron Fine, Deputy County Prosecutor, Everett, for respondent.
*364 MADSEN, Justice.
Defendant challenges the constitutionality of Initiative 159, "Hard Time for Armed Crime," claiming that it does not satisfy the title and single subject requirements of article II, section 19 of the state constitution. In his pro se brief, he also challenges admissibility of his confession, and part of the judgment *366 and sentence. We affirm the conviction, but remand for resentencing.
Defendant Nathaniel R. Broadaway was convicted of first degree robbery committed while armed with a deadly weapon. On September 23, 1995, Broadaway went to the Island Crossing Texaco and placed a note on the counter saying "Give me your money or die bitch." Ex. 4. The clerk at the counter, Tanya Skiles, testified that she at first thought that Broadaway, whom she knew, was joking. However, when he yelled at her to hurry up she emptied the cash register and gave the money to him. She also opened the safe as he ordered and gave him the money in the safe as well as cigarettes which he demanded. Skiles testified that when she turned from the safe, Broadaway pointed a black handgun at her chest. The cash taken totaled $1,072.35.
Shortly after the robbery, Broadaway was arrested and read his Miranda rights. Snohomish County Deputy Sheriff David Harkins asked Broadaway about the robbery, which Broadaway initially denied taking part in. The deputy placed Broadaway in the back of his car. Ms. Skiles identified Broadaway as the robber. About 20 minutes after this identification, Broadaway became agitated and banged his head on the screen in the police car. The parties dispute what occurred at this point. Broadaway claims he asked to see his wife and Harkins promised he would bring her if Broadaway confessed. The State maintains Broadaway asked to see his wife and Harkins said only that he would see what he could do and told Broadaway he was going to jail in any case. After Skiles' identification, Harkins again questioned Broadaway, who led Harkins to the places where he said he had put the gun and most of the money after the robbery. Broadaway's wife was brought to the scene and Broadaway was allowed to say good-bye. He then gave a five-page confession, in which he admitted to robbing the Texaco while armed with a handgun.
At the CrR 3.5 hearing on admissibility of Broadaway's confession, Broadaway maintained that his confession was involuntary because it was induced by a promise from Deputy Harkins that Broadaway could see his wife before being taken to jail. He argued the confession should be suppressed on the ground that his Fifth Amendment right against self-incrimination had been violated. The trial court ruled the confession was voluntary and admissible.
At trial, the defense theory was that Ms. Skiles was part of a conspiracy to rob the Texaco establishment, and that she reported use of a gun to the police in order to avoid suspicion of her own involvement which might arise if she had turned the money over to Broadaway without the threat of a gun. Broadaway maintains that he did not have a gun when he committed the robbery.
The jury found Broadaway guilty of first degree robbery, and returned a special verdict finding that he was armed with a deadly weapon at the time he committed the crime. The standard range for first degree armed robbery with an offender score of 1, as Broadaway had, is 36 to 48 months. The deadly weapon enhancement (firearm enhancement) is 60 months, under the Hard Time for Armed Crime Act, Laws of 1995, ch. 129 (Initiative 159); see RCW 9.94A.310(3). The trial court sentenced Broadaway within the standard sentence range with the deadly weapon enhancement, a total sentence of 99 months.
The judgment and sentence provides in part:
COMMUNITY PLACEMENT. RCW 9.94A.120. Community placement is ordered for a community placement eligible offense (e.g., ... any crime against a person with a deadly weapon finding ...), and standard mandatory conditions are ordered. Community placement is ordered for the period of time provided by law.
Clerk's Papers (CP) at 17. The judge stated at the sentencing hearing that "[t]he statute requires two years of community placement so I'll impose that as a standard statutory condition." Verbatim Report of Proceedings (RP) (Dec. 11, 1995) at 11. The judgment and sentence does not reflect this conclusion.
Broadaway appealed. In the briefs prepared by counsel, he challenges the constitutionality of Initiative 159 under article II, section 19 of the Washington State Constitution. *367 Initiative 159 was submitted to and passed by the Legislature in 1995. Its official ballot title is: "Shall penalties and sentencing standards be increased for crimes involving a firearm, and sentences and plea agreements be public records?" Its legislative title is: "An Act Relating to increasing penalties for armed crimes...." Laws of 1995, ch. 129.[1]
In a pro se supplemental brief, Broadaway also challenges the admissibility of his confession, as well as the provision for community placement in his judgment and sentence. The Court of Appeals certified the appeal to this court, which accepted certification.

ANALYSIS

Article II, Section 19
The state constitution provides that "[n]o bill shall embrace more than one subject, and that shall be expressed in the title." Washington Const. art. II, § 19. Two policies underlie the constitutional provision: the prevention of "`logrolling,' or pushing legislation through by attaching it to other necessary or desirable legislation," and general notice to members of the Legislature and the public of what is contained in the proposed legislation. State v. Thorne, 129 Wash.2d 736, 757, 921 P.2d 514 (1996); see Washington Fed'n of State Employees v. State, 127 Wash.2d 544, 552, 901 P.2d 1028 (1995).
Initiative 159, "Hard Time for Armed Crime," was an initiative to the Legislature which the Legislature enacted in 1995. Broadaway argues that the initiative contains several subjects which are not reflected in the title of the act. He also argues that the relevant title is the ballot title, that the ballot title contains multiple subjects in violation of article II, section 19 of the state constitution, and that none of the initiative's sections dealing with multiple subjects are severable in light of the multiple subjects in the title. The State argues that the relevant title is the legislative title, that all the subjects of the initiative fall within the single subject of the legislative title, and, alternatively, that the deadly weapon enhancement for Broadaway's armed robbery clearly falls within the legislative title's subject and accordingly Broadaway cannot complain about other sections of the initiative which may not fall within the subject matter of the title.
The first question is whether the ballot title or the legislative title is the relevant title. The ballot title of Initiative 159 is "Shall penalties and sentencing standards be increased for crimes involving a firearm, and sentences and plea agreements be public records?" The legislative title is "An Act Relating *368 to increasing penalties for armed crimes...." Laws of 1995, ch. 129.
Broadaway relies on a recent opinion of this court holding that where the people enact legislation through the initiative process, the ballot title of the initiative is the relevant title for purposes of article II, section 19. See Washington Fed'n, 127 Wash.2d at 555, 901 P.2d 1028; see also Thorne, 129 Wash.2d at 757, 921 P.2d 514. The court reached this conclusion because not all initiatives have legislative titles and because it is the ballot title with which voters are faced in the voting booth. Washington Fed'n, 127 Wash.2d at 555, 901 P.2d 1028.
However, in Washington Fed'n, 127 Wash.2d 544, 901 P.2d 1028, the people enacted the legislation while here the Legislature enacted Initiative 159. When the Legislature enacts an initiative measure, the legislative title is the relevant title because it, not the ballot title, is the title which appears on the proposed bill before them. For example, when the Secretary of State certified Initiative 159 to the Legislature, it included the legislative title, but did not include the ballot title. See 1 House Journal, 54th Legislature (1995), at 52-66; 1 Senate Journal, 54th Legislature (1995), at 36-45, 156; cf. Final Bill Report, SI 159, 54th Legislature (1995) (without ballot title); House Bill Report, HI 159, 54th Legislature (1995) (same). Under article II, section 19, the notice provided by a title must be "`notice that would lead to an inquiry into the body of the act, or indicate to an inquiring mind the scope and purpose of the law.'" Washington Fed'n, 127 Wash.2d at 555, 901 P.2d 1028 (quoting Young Men's Christian Ass'n (YMCA) v. State, 62 Wash.2d 504, 506, 383 P.2d 497 (1963)). Legislators who must decide whether to enact an initiative measure will be given notice within the meaning of article II, section 19, by the legislative title on the proposed bill.
Next, Broadaway argues that the ballot title is the relevant title because initiative signers may not read the entire text or explanatory statement of the petition and will rely on the ballot title. Thus, a ballot title which omits matters or misrepresents an initiative's actual provisions can mislead a substantial number of people into signing it. See In re Ballot Title for Initiative 333 v. Gorton, 88 Wash.2d 192, 198, 558 P.2d 248, 559 P.2d 562 (1977) ("[w]e can safely assume that not all voters will read the text of the initiative or the explanatory statement"). If an initiative's ballot title is thought to be misleading, however, both proponents and opponents can challenge the Attorney General's formulation of the official ballot title under RCW 29.79.060 by appealing to the Thurston County Superior Court within five days from the filing of the ballot title in the Secretary of State's office. Thus, RCW 29.79.060 provides a vehicle for assuring that an inaccurate ballot title does not remain on an initiative so as to mislead the signers.
Defendant also maintains that the danger of logrolling is especially significant in an initiative to the Legislature because the Legislature may enact it in its entirety or reject it in its entirety, but it cannot enact into law a modified or altered initiative. See Const. art. II, § 1. He contends that legislators will feel pressured to enact what they perceive to be a popular measure notwithstanding more controversial and possibly unpopular provisions not expressed in the title. While it is true that the Legislature cannot alter or modify an initiative, it can reject it, or it can reject it and propose an alternative measure in which case both the initiative and the alternative will then be submitted to the people at the next general election. See Const. art. II, § 1. The Legislature is not obliged to enact an initiative submitted to it. Moreover, an initiative is not insulated from a challenge that multiple subjects have been included in violation of policy against logrolling merely because the legislative title, rather than the ballot title, is considered for purposes of article II, section 19.
We hold that where an initiative to the Legislature is enacted by the Legislature, the legislative title is the relevant title for purposes of article II, section 19.
The next question is whether the legislative title, "[a]n [a]ct [r]elating to increasing penalties for armed crime ..." satisfies article II, section 19. Broadaway argues that Initiative 159 violates the constitutional provision *369 because it embraces more than one subject.
The parties dispute whether the legislative title of Initiative 159 is general or restrictive. A general title will be given a liberal construction. See Thorne, 129 Wash.2d at 758, 921 P.2d 514. No unconstitutionality exists even if the "`general subject contains several incidental subjects or subdivisions.... All that is required is that there be some "rational unity" between the general subject and the incidental subdivisions.'" State v. Grisby, 97 Wash.2d 493, 498, 647 P.2d 6 (1982) (quoting Kueckelhan v. Federal Old Line Ins. Co., 69 Wash.2d 392, 403, 418 P.2d 443 (1966)), cert. denied, 459 U.S. 1211, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983). A restrictive title, on the other hand, will not be regarded as liberally and provisions not fairly within it will not be given force. See Thorne, 129 Wash.2d at 758, 921 P.2d 514 (citing State ex rel. Toll Bridge Auth. v. Yelle, 32 Wash.2d 13, 26, 200 P.2d 467 (1948)).
The legislative title of Initiative 159 is restrictive. A restrictive title "is one where a particular part or branch of a subject is carved out and selected as the subject of the legislation." Gruen v. State Tax Comm'n, 35 Wash.2d 1, 23, 211 P.2d 651 (1949), overruled on other grounds by State ex rel. State Fin. Comm. v. Martin, 62 Wash.2d 645, 384 P.2d 833 (1963). A restrictive title is "narrow," as opposed to broad. See id. at 22, 211 P.2d 651; Washington Fed'n, 127 Wash.2d at 555, 901 P.2d 1028; State Fin. Comm. v. O'Brien, 105 Wash.2d 78, 80, 711 P.2d 993 (1986). It is of specific rather than generic import. Olympic Motors, Inc. v. McCroskey, 15 Wash.2d 665, 672, 132 P.2d 355, 150 A.L.R. 1306 (1942); De Cano v. State, 7 Wash.2d 613, 627, 110 P.2d 627 (1941). A restrictive title expressly limits the scope of the act to that expressed in the title. See Blanco v. Sun Ranches, 38 Wash.2d 894, 901-02, 234 P.2d 499, 235 P.2d 830 (1951); Daviscourt v. Peistrup, 40 Wash. App. 433, 439-440, 698 P.2d 1093 (1985).[2] The legislative title of Initiative 159 carves out an area of criminal offenses, armed crime, and limits its scope to increasing penalties for armed crime.
The legislative title contains only one subject, increasing penalties for armed crimes. Where proposed legislation with a single subject title has multiple subjects, those matters not encompassed within the title are invalid but the remainder is not unconstitutional if (a) the objectionable portions are severable in a way that a court can presume the enacting body would have enacted the valid portion without the invalid portion, and (b) elimination of the invalid part would not render the remainder of the act incapable of accomplishing the legislative purpose. See Municipality of Metro. Seattle v. O'Brien, 86 Wash.2d 339, 348-49, 544 P.2d 729 (1976); Swedish Hosp. of Seattle v. Department of Labor & Indus., 26 Wash.2d 819, 832, 176 P.2d 429 (1947). A saving clause may indicate legislative intent that the remainder of the act would have been enacted without the invalid portions. See id. at 833, 176 P.2d 429.
The provisions of Initiative 159 are severable such that passage of valid portions may be presumed, and elimination of those provisions which Defendant alleges are unconstitutional would not render the remainder of *370 the Act incapable of accomplishing the legislative purpose of increasing penalties for numerous armed crimes. Moreover, the Act has a saving clause. See Laws of 1995, ch. 127, § 22. We presume the Legislature would have enacted the remainder of the Act even if some portions are invalid because their subject matter does not fall within the Act's title.
Broadaway's offense was robbery in the first degree while armed with a deadly weapon, a firearm. The deadly weapon enhancement of 60 months which he received is based upon section 2 of Initiative 159, and is a result of his being armed specifically with a firearm. See RCW 9.94A.310(3). The firearm enhancement provisions of the Act, the only portion of the Act at issue in this case, are not violative of article II, section 19, because penalty enhancements for crimes involving use of firearms fall squarely within the restrictive legislative title of Initiative 159. Because the other sections of the Act which Defendant challenges are not actually at issue, we decline to address the alleged unconstitutionality of those sections under article II, section 19. See State v. Thorne, 129 Wash.2d 736, 757-58, 921 P.2d 514 (1996); State v. Bowman, 57 Wash.2d 266, 272, 356 P.2d 999 (1960).

Confession
In his pro se supplemental brief, Broadaway argues that his confession was inadmissible. Broadaway admitted to being armed with a handgun when he robbed the Texaco store. Broadaway maintains he was induced to make the confession by a promise from Deputy Harkins that Broadaway's wife would be brought to him before he was taken to jail if he agreed to confess.
We first turn to the appropriate standard of review. In recent opinions, Washington courts have said that the question on review is whether there is substantial evidence in the record from which the trial court could have found that the confession was voluntary by a preponderance of the evidence. E.g., State v. Aten, 130 Wash.2d 640, 664, 927 P.2d 210 (1996); State v. Ng, 110 Wash.2d 32, 37, 750 P.2d 632 (1988); State v. Cushing, 68 Wash.App. 388, 393, 842 P.2d 1035 (1993). Washington courts have also said that the appellate court must conduct an independent review of the record in order to determine the voluntariness of the confession. E.g., State v. Setzer, 20 Wash.App. 46, 49, 579 P.2d 957 (1978).
In the context of a Fourth Amendment search, we examined the rule often applied in Washington appellate decisions that the appellate court must conduct an independent evaluation of the evidence. We concluded that the rule had been misappropriated into this state's case law. State v. Hill, 123 Wash.2d 641, 870 P.2d 313 (1994). Its origin is in United States Supreme Court cases which hold that factual determinations by a state trier of fact do not bind that Court in a matter of federal right. Id. at 645, 870 P.2d 313 (citing cases). Noting that the Court will still defer to state court resolutions of conflicts of evidence about the occurrence or nonoccurrence of factual events and happenings, this court said that "[n]evertheless, the Supreme Court's duty of constitutional adjudication mandates that the ultimate resolution of the constitutional question be the subject of an independent examination by the Court." Id. at 646, 870 P.2d 313. We acknowledged that there was inconsistency in state cases, with some applying the rule that an unchallenged finding of fact is a verity on appeal even when entered following a suppression motion, while other cases stated that the appellate court must undertake an independent evaluation of the evidence. Id. at 644-45, 870 P.2d 313. Notably, we observed that "[t]here is equal, if not greater, confusion regarding the standard of review for findings entered in cases involving the admissibility of a confession." Id. at 645 n. 1, 870 P.2d 313.
We concluded in Hill that because the principle of independent review of the evidence lacked a sound foundation in Washington law, and because there is no reason to distinguish between constitutional claims and other claims of right, "in reviewing findings of fact entered following a motion to suppress, we will review only those facts to which error has been assigned. Where there is substantial evidence in the record supporting the challenged facts, those facts will be binding on appeal." Id. at 647, 870 P.2d 313.
*371 Tracking the history of Washington cases we find that each case stating the principle of independent review leads back to the same United States Supreme Court case which was the source of law "misappropriated" into Washington law in the search and seizure context of Hill. Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963), cited in State v. Rutherford, 63 Wash.2d 949, 955, 389 P.2d 895 (1964). Haynes itself involved admissibility of a confession alleged to have been coerced by a promise that defendant, who was held by the police incommunicado, could only communicate by telephone with his wife after he made a written confession.
We conclude there is no more foundation existing in Washington law for a principle of independent review of the record in a confession case than in one involving search and seizure. We hold that the rule to be applied in confession cases is that findings of fact entered following a CrR 3.5 hearing will be verities on appeal if unchallenged, and, if challenged, they are verities if supported by substantial evidence in the record. As the court in Hill reasoned:
There is adequate opportunity for review of trial court findings within the ordinary bounds of review. A trial court's erroneous determination of facts, unsupported by substantial evidence, will not be binding on appeal.... This strikes the proper balance between protecting the rights of the defendant, constitutional or otherwise, and according deference to the factual determinations of the actual trier of fact.
Hill, 123 Wash.2d at 647, 870 P.2d 313.[3]
The second issue is what is required to show that a confession is voluntary and admissible. Broadaway maintains that in deciding whether a confession is voluntary, the confession "`must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.'" Malloy v. Hogan, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964), cited in State v. Vickers, 24 Wash.App. 843, 846, 604 P.2d 997 (1979); see also State v. Setzer, 20 Wash.App. 46, 579 P.2d 957 (1978). This standard originated in Bram v. United States, 168 U.S. 532, 542-43, 18 S.Ct. 183, 186-87, 42 L.Ed. 568 (1897). Setzer, 20 Wash.App. at 49, 579 P.2d 957.
This is not the correct test of voluntariness. The United States Supreme Court recently explained that this standard from Bram "under current precedent does not state the standard for determining the voluntariness of a confession." Arizona v. Fulminante, 499 U.S. 279, 285, 111 S.Ct. 1246, 1251, 113 L.Ed.2d 302 (1991). Instead, the inquiry is whether, under the totality of the circumstances, the confession was coerced. Id.; see State v. Rupe, 101 Wash.2d 664, 678-79, 683 P.2d 571 (1984) (totality of circumstances test of voluntariness; circumstances include the condition of the defendant, the defendant's mental abilities, and the conduct of the police).
In assessing the totality of the circumstances, a court must consider any promises or misrepresentations made by the interrogating officers. United States v. Springs, 17 F.3d 192, 194 (7th Cir.), cert. denied, 513 U.S. 955, 115 S.Ct. 375, 130 L.Ed.2d 326 (1994); United States v. Walton, 10 F.3d 1024, 1028-29 (3d Cir.1993). The court must *372 determine whether there is a causal relationship between the promise and the confession. Walton, 10 F.3d at 1029-30. The inquiry is whether the Defendant's will was overborne. See Rupe, 101 Wash.2d at 679, 683 P.2d 571.
In this case, Broadaway has not assigned error to any of the findings of fact entered following the CrR 3.5 hearing. Among the disputed facts are:
....
2) Whether Deputy Harkins told the defendant that he would definitely get the defendant's wife in regard for the defendant giving a statement; or whether Harkins told the defendant he would see what he could do regarding getting the defendant's wife there, but no promises.
3) Whether the defendant was induced to make a five-page written confession to armed robbery in reliance of [sic] the deputy allowing him to see his wife.
CP at 76 (The Disputed Facts).
Among the trial court's findings on the disputed issues of fact are:
....
2) Deputy Harkins told the defendant that he would see what he could do about getting the defendant's wife there, that there was no specific promise made regarding this.
3) That the defendant's written and verbal confessions were not made by the inducement of possibly seeing his wife.
CP at 76 (Court's Conclusions as to Disputed Facts).
Under the rule we announce in this case, Broadaway's failure to challenge the trial court's "conclusions" as to disputed facts (2) and (3) would leave them verities on appeal, and his challenge to admissibility of his confession would fail because the trial court found there was no promise which induced the confession.
However, because of confusions as to whether assignment of error to findings entered after a CrR 3.5 hearing were necessary, we will review the record to determine whether there is substantial evidence from which the trial court could have found the confession voluntary under the totality of the circumstances. We direct that from the time of the filing of this opinion, however, the failure to assign error to the trial court's findings on the voluntariness of a confession will leave them verities on review.[4]
This record contains substantial evidence supporting the trial court's determination of voluntariness. Deputy Harkins testified that about 20 minutes after Broadaway was identified by Skiles he became agitated and began to bang his head on the screen in the patrol car. Harkins testified that Broadaway said he would tell the deputy what he knew, and he asked to see his wife, to have a cigarette, and to see Christopher Lewis (a friend who was also a suspect). Harkins testified he told Defendant it was up to him whether he talked. He said he indicated to Defendant that he was going to jail regardless of whether he talked or not. Harkins testified that he told Broadaway that he would see what he could do about getting his wife over to see him. Harkins denied making any promises to Broadaway regarding his wife. Broadaway's wife was brought to the arrest scene and Broadaway was allowed to say good-bye to her.
Harkins also testified that after Broadaway asked to see his wife, but before Broadaway made his written confession and before his wife was brought, Broadaway showed the police officers where he had put the gun and most of the money following the robbery, and he told Harkins about the robbery. Broadaway was read his Miranda rights a second time, and signed a waiver. His wife was then brought. Broadaway then made a five-page written confession which he signed.
Although Broadaway's testimony at the CrR 3.5 hearing disputes this evidence, Deputy Harkins' testimony constitutes substantial evidence supporting the trial court's findings, particularly given the deference accorded the trier of fact on questions of credibility: First, Harkins said he would see what he could do about having Harkins' wife *373 brought but he made no promise. Second, Broadaway was twice given Miranda rights (and does not claim a violation of those rights or that he misunderstood them), and gave a written confession after he said good-bye to his wife. Thus, even if a promise had been made, Broadaway was not compelled to go forward with his written confession in exchange for seeing his wife and any promise did not induce the confession.
The record supports the determination of voluntariness. Broadaway's confession was properly admitted.

Judgment and Sentence
Broadaway challenges his judgment and sentence, saying that it does not sentence him to community placement and arguing that the Department of Corrections lacks authority to impose community placement where the judgment and sentence does not do so.
As noted, the judgment and sentence contains "boilerplate" language providing that "Community placement is ordered for a community placement eligible offense... for the period of time provided by law." CP at 17. Nothing else in the judgment and sentence refers to community placement. The trial judge stated during the sentencing hearing that two years of community placement was required by law. RP at 11 (Dec. 11, 1995). Broadaway is correct that under RCW 9.94A.120(9)(a) a one year period of community placement is required.
We agree that the judgment and sentence is deficient. RCW 9.94A.120(9)(a) states that "the court shall in addition to the other terms of the sentence, sentence the offender to a one-year term of community placement...." (Emphasis added). Here, the sentence does not contain a provision for a one-year term of community placement imposed by the court as the statute requires. In addition to its statutory obligation the trial court should expressly provide in the sentence for the precise term of community placement because in many cases it will assist a trial court in assessing the overall sentence for the defendant, for example, whether to impose a sentence within the standard range. It will also allow a defendant to appeal an erroneous sentence of community placement before serving the term of incarceration. This is significant because the Department of Corrections is not authorized to correct an erroneous judgment and sentence. In re Davis, 67 Wash.App. 1, 834 P.2d 92 (1992) (Department of Corrections could not impose community placement erroneously not included in judgment and sentence); see In re Chapman, 105 Wash.2d 211, 216, 713 P.2d 106 (1986).[5]
A court has the authority to correct an erroneous sentence. State v. Hardesty, 129 Wash.2d 303, 315, 915 P.2d 1080 (1996); State v. Pascal, 108 Wash.2d 125, 134, 736 P.2d 1065 (1987) (quoting State v. Pringle, 83 Wash.2d 188, 193, 517 P.2d 192 (1973)). Where a sentence is insufficiently specific about the period of community placement required by law, remand for amendment of the judgment and sentence to expressly provide for the correct period of community placement is the proper course. Further, because the trial court was mistaken about the period of community placement required by law, resentencing is appropriate to allow the trial judge to reconsider the length of the standard range sentence in light of the correct period of community placement required. Cf. In re Habbitt, 96 Wash.2d 500, 636 P.2d 1098 (1981) (where the trial court improperly applied firearm findings to enhance first degree robbery convictions, remand for resentencing, rather than simply striking firearm enhancements, is the appropriate remedy).
Broadaway's conviction is affirmed. We remand this case for resentencing.
*374 DURHAM, C.J., and DOLLIVER, SMITH, GUY, ALEXANDER and SANDERS, JJ., concur.
TALMADGE, Justice (concurring).
I write separately in this case only because the majority incorrectly analyzes article II, section 19 of the Washington Constitution as it applies to Initiative 159. To determine if a section of Initiative 159 is outside the scope of the title for purposes of article II, section 19, the majority looks only to the legislative title, stating the legislative title is relevant to legislators who enacted Initiative 159 into law. Majority op. at 368-69. However, under article II, section 19, courts must look to both the ballot question and the legislative title of an initiative to the Legislature in assessing the constitutionality of a section. In the present case, scrutiny of both the legislative question and the ballot title demonstrates the section of Initiative 159 applicable to Broadaway is valid because it is within the title of the enactment.
The majority misunderstands the process by which an initiative measure becomes law. There are different types of initiatives and referenda set out under article II, section 1 of the Washington Constitution. Washington Fed'n of State Employees v. State, 127 Wash.2d 544, 577-78, 901 P.2d 1028 (1995) (Talmadge, J., concurring in part/dissenting in part). With respect to initiatives to the Legislature, like Initiative 134 at issue in Washington Fed'n or Initiative 159 at issue in this case, different procedural rules apply than for initiatives to the people. Article II, section 1 of the constitution requires fewer signatures to secure a ballot position for an initiative to the Legislature than it requires for an initiative to the people. Once an initiative to the people receives sufficient signatures, however, the Legislature may enact the measure as initiated by the people, take no action, or offer an alternative for the ballot. If the Legislature enacts the measure as initiated by the people, it becomes law. If the Legislature takes no action with respect to the measure, the measure is placed on the ballot at the next statewide general election. If the Legislature enacts an alternative to the measure proposed by the people, both the measure proposed by the people and the alternative proposed by the Legislature are placed on the ballot.
Plainly, for initiatives to the Legislature, both the legislative title and the ballot question are relevant to the decision-making process. The only way an initiative to the Legislature can be placed on the legislative agenda is by the signature-gathering process, where the ballot question, a short statement of the intent of the initiative, is decisively set out for voters; few potential or actual signators, however, read a proposed initiative in its entirety prior to signing the initiative. In re Ballot Title for Initiative 333 v. Gorton, 88 Wash.2d 192, 198, 558 P.2d 248, 559 P.2d 562 (1977). As a result, proponents of the measure prominently feature the ballot question in the process of gathering signatures. Here, the ballot question was placed on the front of Initiative 159 signature sheets. App. A, Br. of Resp't. Thus, the ballot question is of keen importance to decisionmakers in this instance, the people who compel the Legislature to address and issue by signing an initiative to the Legislature.
If the Legislature takes action with respect to an initiative to the Legislature, by either enacting the measure as written or placing an alternative on the ballot for the people to review, then the legislative title becomes important to legislators who must address the measure. Consequently, the legislative title is important to another set of decisionmakersthe legislatorswho must decide to enact an initiative to the Legislature, or place the measure, or possibly an alternative, before the voters.
By contrast, the majority believes the process of gathering signatures for an initiative to the Legislature and the legislative consideration of such a measure are discrete; the ballot question can be separately considered if the measure goes on the ballot; and the legislative title can be appropriately considered if the Legislature enacts the measure into law. The majority's positions fail to take fully into account the important role the ballot question plays in the first instance in getting an initiative before the Legislature.
*375 The majority's suggestion that the proponents and opponents of the measure can challenge the Attorney General's formulation of the official ballot title under RCW 29.79.060, if a ballot title is misleading, is hardly a remedy. RCW 29.79.040 indicates only that the ballot question must be "a true and impartial statement of the purpose of the measure." The analysis to determine compliance with RCW 29.79.040 is therefore not coextensive with the analysis to determine whether or not article II, section 19 has been satisfied.
Mindful of the realities of the process by which initiatives to the Legislature are placed on the legislative agenda and of the framers' concerns about notice to the electorate and the elimination of logrolling, see Washington Fed'n, 127 Wash.2d 544, 901 P.2d 1028, we must consider both the ballot question and the legislative title in determining whether or not a section of an initiative to the Legislature satisfies the requirements of article II, section 19 of the Washington Constitution.
In the present case, the ballot question of Initiative 159 read: "Shall penalties in sentencing standards be increased for crimes involving a firearm, and sentences and plea agreements be public records?" App. A, Br. of Resp't. The legislative title of Initiative 159 read: "an act relating to increasing penalties for armed crimes ..." App. A, Br. of Resp't. The section of Initiative 159 about which Broadaway complains is the deadly weapon enhancement in RCW 9.94A.310(3), which substantially increased the mandatory sentence for individuals convicted of certain felonies that involved a deadly weapon. That section is clearly within the ballot question or legislative title of Initiative 159.
Broadaway also argues that Initiative 159 embraces more than one subject in violation of article II, section 19. The subject of Initiative 159 is expressed in its ballot question and legislative title. The purpose of Initiative 159 was to provide "hard time for armed crime," but the essential purpose of the measure was to increase penalties for crimes involving a firearm. Initiative 159 embraces subjects such as the imposition of the death penalty for certain crimes and other issues unrelated to increasing sentences for crimes committed with firearms ("hard time for armed crime"). Initiative 159 embraces more than one subject. However, Initiative 159 does contain a savings clause, and because the sections of Initiative 159 Broadaway challenges are not actually at issue in his case, we need not address their propriety under article II, section 19. State v. Thorne, 129 Wash.2d 736, 757-58, 921 P.2d 514 (1996).
We must adopt clear, realistic principles to govern the titles and contents of legislative enactments and popularly adopted measures. The majority's determination that only the legislative title of an initiative to the Legislature is relevant when the Legislature enacts such a measure into law fails to take into consideration the reality of the process by which the measure was placed on the legislative agenda. Both the ballot question and the legislative title are relevant to the determinations of whether the title of the enactment is constitutionally adequate and whether the measure contains more than a single subject. In this case, given the section about which Broadaway complains, article II, section 19 is not violated. I therefore concur in the majority's disposition.
JOHNSON, J., concurs in result.
NOTES
[1] The Act increases enhancements for crimes committed while armed with a deadly weapon, with additional increases if the weapon is a firearm, section 2; increases penalties for several armed crimes, section 3; classifies all crimes with deadly weapon enhancements as crimes against a person under recommended prosecuting standards, section 4; requires that public records be maintained of plea agreements and sentences for violent, most serious, and armed offenses, section 5; requires that comparative judicial records be kept of plea agreements and sentences for violent, most serious and armed offenses, section 6; removes good time from the portion of sentences representing deadly weapon enhancements, section 7; increases reckless endangerment in the first degree, which involves "drive by" shootings and discharge of a firearm, from a class C to a class B felony, section 8; expands the crime of burglary in the first degree to cover entry or remaining in a building, not just a dwelling, with the intent to commit a crime against a person or property while armed with a deadly weapon, section 9; limits the crime of theft of a firearm to actual theft, section 10 (section 3 establishes a seriousness level for this offense); removes firearms from the definitions of first and second degree theft, sections 11 and 12 (companions to section 10); increases the penalty for possessing a stolen firearm (in connection with sections 3 and 10), section 13; removes firearms from the definitions of first and second degree possession of stolen property, sections 14 and 15 (companions to section 13); separates the crime of unlawful possession of a firearm into two degrees, section 16; authorizes the death penalty (1) for drive by shootings and murders to retain or obtain group membership, (2) where the victim is a member of the indeterminate sentence review board, (3) to conceal identity in order to avoid prosecution as a persistent offender, and (4) for murder while committing residential burglary, section 17; and provides for notification of enhanced penalties provided by the Act, section 18. Laws of 1995, ch. 129, §§ 2-18. Sections 19-23 of the Act concern repealer, codification, short title, severability, and captions. Laws of 1995, ch. 129, §§ 19-23.
[2] The following titles have been held to be restrictive: "Shall criminals who are convicted of `most serious offenses' on three occasions be sentenced to life in prison without parole?" State v. Thorne, 129 Wash.2d 736, 757, 921 P.2d 514 (1996). "An act relating to the acquisition of property by public agencies...." Daviscourt v. Peistrup, 40 Wash.App. 433, 437, 698 P.2d 1093 (1985). "An act relating to the protection of employees in factories where machinery is used." Blanco v. Sun Ranches, 38 Wash.2d 894, 901, 234 P.2d 499, 235 P.2d 830 (1951). "An act relating to local improvements in cities and towns...." Cory v. Nethery, 19 Wash.2d 326, 329-31, 142 P.2d 488 (1943). "An act relating to the rights and disabilities of aliens with respect to land...." De Cano v. State, 7 Wash.2d 613, 623, 110 P.2d 627 (1941). "An act relating to the venue of civil actions in justice courts." National Ass'n of Creditors v. Brown, 147 Wash. 1, 7, 264 P. 1005 (1928). "An act creating and providing for the enforcement of liens for labor and material." Armour & Co. v. Western Constr. Co., 36 Wash. 529, 537, 78 P. 1106 (1905). "An act giving workmen's compensation benefits to persons engaged in hazardous and extrahazardous occupations in charitable institutions." Swedish Hosp. v. Department of Labor & Indus., 26 Wash.2d 819, 830-31, 176 P.2d 429 (1947).
[3] The United States Supreme Court has adhered to its rule that it will not be bound by a state court determination of voluntariness but instead will make an independent review of the record. E.g. Mincey v. Arizona, 437 U.S. 385, 398, 98 S.Ct. 2408, 2416-17, 57 L.Ed.2d 290 (1978) (direct appeal from state court judgment); Miller v. Fenton, 474 U.S. 104, 110-112, 106 S.Ct. 445, 449-51, 88 L.Ed.2d 405 (1985) (habeas corpus review); Arizona v. Fulminante, 499 U.S. 279, 287, 111 S.Ct. 1246, 1252-53, 113 L.Ed.2d 302 (1991) (direct appeal from state court judgment). Even under this standard, however, subsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the Miranda warnings, often require the resolution of conflicting testimony of police and defendant. The law is therefore clear that state-court findings on such matters are conclusive on the habeas court if fairly supported in the record....

Miller, 474 U.S. at 117, 106 S.Ct. at 453.
[4] Because we are clarifying the appropriate steps to secure appellate review, cases discussing retroactivity of new rules of criminal prosecution are inapplicable. E.g., State v. Jackson, 124 Wash.2d 359, 361-62, 878 P.2d 453 (1994).
[5] Under RCW 9.94A.210(7) the Department can petition the Court of Appeals for review of an erroneous sentence once all reasonable efforts to resolve the dispute at the superior court level have been exhausted. The statute's purpose is to allow review where neither the defendant nor the State appeals an erroneous sentence. See In re Davis, 67 Wash.App. 1, 8-9, 834 P.2d 92 (1992) (discussing legislative history of provision, particularly the Final Bill Report for HB 1342). Here, Broadaway has challenged the judgment and sentence.