FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 MAR 26 AM 8: 35

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75992-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ANDRE JEAN ASH, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 26, 2018 |
| | ) | |

LEACH, J. — Andre Ash appeals his conviction for assault of a child in the second degree. Primarily, Ash challenges the admission of his confession, claiming that unfairly coercive and deceptive tactics produced it. Because substantial evidence supports the trial court's finding that Ash voluntarily confessed and his remaining challenges lack merit, we affirm.

### FACTS

Andre Ash and his girlfriend, Tambra Shean, are the parents of an infant. After a physician at Seattle Children's Hospital examined a lump on the infant's head, the hospital notified police about suspected abuse. The police talked with both Ash and Shean at the hospital. Shean told police that she wanted to take a polygraph examination. Ash was initially reluctant to take one but changed his mind two days later.

Three days later, the police gave Ash a ride to the police station for his polygraph examination. The detective examiner, Karen Kowalchyk, told him that he was free to leave at any time, the interview was voluntary, and the interview was being recorded.

When Kowalchyk began questioning Ash about the infant's injuries, she decided she could not conduct the polygraph test because Ash could not provide yes or no answers. Because she had developed a rapport with Ash, she decided to continue to interview Ash without the polygraph test. During the videotaped interview, Ash confessed to shaking the infant, hitting his head on the wall twice, and squeezing him. After the interview, the police drove Ash home. The next day, the police arrested Ash and charged him with assault of a child in the second degree.

Ash asked the trial court to suppress his confession on the grounds that the State coerced it. After a CrR 3.5 hearing, the trial court denied his request because it found that Ash voluntarily confessed. It later convicted Ash at a stipulated bench trial. Ash appealed. About six months later, the trial court entered its findings of fact and conclusions of law supporting the conviction.

## STANDARD OF REVIEW

An appellate court reviews a trial court's challenged findings of fact for substantial evidence.[1] "[W]hen reviewing a trial court's conclusion of voluntariness, an appellate court determines 'whether there is substantial evidence in the record from which the trial court could have found that the confession was voluntary by a preponderance of the evidence.'"[2] An appellate court accepts unchallenged findings as true on appeal[3] and reviews conclusions of law de novo.[4]

## ANALYSIS

### Involuntary Confession

Ash challenges the trial court's finding that the State did not coerce his confession and its conclusion that the State did not violate his Fourteenth Amendment due process rights[5] and Fifth Amendment protection against self-incrimination.[6] More simply stated, he claims that his confession was involuntary. We disagree.

---

[1] Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wn.2d 364, 369, 798 P.2d 799 (1990).

[2] State v. Rafay, 168 Wn. App. 734, 757-58, 285 P.3d 83 (2012) (quoting State v. Broadaway, 133 Wn.2d 118, 129, 942 P.2d 363 (1997)).

[3] State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

[4] State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

[5] U.S. CONST. amend. XIV.

[6] U.S. CONST. amend. V.

The Fourteenth Amendment's due process clause requires that the State not use methods of physical or psychological coercion to procure a confession.[7] Methods of coercion offend the underlying principle that the system of criminal law is inquisitorial and not accusatorial.[8] To determine if the State coerced a confession, the court examines the totality of the circumstances of each case.[9] Potentially relevant circumstances include the length of the interrogation, its location, its continuity, the defendant's physical condition and mental abilities, and police conduct.[10] "In assessing the totality of the circumstances, a court must consider any promises or misrepresentation made by the interrogating officers."[11] The court determines the existence of any causal link between promises or misrepresentations of the officer and the defendant's confession.[12] The court asks whether the defendant's will was overborne by the circumstances.[13]

First, Ash claims that he was vulnerable to coercion because he only slept four hours the night before his interview. Courts have found confessions

---

[7] Rogers v. Richmond, 365 U.S. 534, 540, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1961).
[8] Rogers, 365 U.S. at 540-41.
[9] Broadaway, 133 Wn.2d at 132.
[10] State v. Unga, 165 Wn.2d 95, 101, 196 P.3d 645 (2008).
[11] Broadaway, 133 Wn.2d at 132.
[12] Broadaway, 133 Wn.2d at 132.
[13] Broadaway, 133 Wn.2d at 132 (citing State v. Rupe, 101 Wn.2d 664, 679, 683 P.2d 571 (1984)).

involuntary because of a defendant's poor physical and mental condition.[14] Here, the trial court found that Ash appeared to be in normal physical condition and exhibited no injuries or symptoms of pain. Although Ash slept only four hours the night before, he normally sleeps only six hours. Kowalchyk asked "suitability questions" to rule out any concerns regarding drug or alcohol use, prescription medications, mental health or medical issues, pain, and adequate sleep. Kowalchyk also asked Ash if he was too tired to take the polygraph examination, and he replied, "No." We conclude substantial evidence supports the trial court's findings that neither Ash's physical condition nor his mental condition suggested that he was susceptible to coercion.

Next, Ash asserts that Kowalchyk coerced his confession by making misrepresentations. Ash claims that Kowalchyk falsely told him that the infant had shaken baby syndrome. Ash relies on a New York case, People v. Thomas,[15] to demonstrate how an interrogation filled with falsehoods can be coercive. In Thomas, the officers told the defendant several lies that included (1) they were not investigating a crime, (2) the defendant could go home once he told them what happened, (3) that he must tell them what happened to help save the baby's life (the baby was already dead), and (4) the defendant's wife blamed him for the

---

[14] See Mincey v. Arizona, 437 U.S. 385, 401-02, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978) (holding that the statements were coerced because the officer questioned Mincey when he was hospitalized, severely wounded, and confused).
[15] 22 N.Y.3d 629, 8 N.E.3d 308, N.Y.S.2d 193 (2014).

baby's injuries.[16] Thomas does not apply here. Kowalchyk testified that another officer told her that the infant had shaken baby syndrome and retinal hemorrhaging. Therefore, Kowalchyk did not engage in deception by repeating this information to Ash.

Ash also asserts Kowalchyk used the "Reid technique" throughout questioning to "subjugate the individual to the will of his examiner."[17] The Reid technique uses methods such as isolation, minimization, trickery, and negation of the suspect's version of the events to induce a confession.[18] Kowalchyk testified that she used minimization but no other methods associated with the Reid technique. When asked about the Reid technique's use of maximization, she could not recall because she received the training 14 years earlier. Ash also claims in his statement of additional grounds for review that the creators of the Reid technique expressly advise interrogators to avoid suggesting "counseling" because it may result in false confessions. He cites Commonwealth v. DiGiambattista,[19] a Massachusetts case, to support his assertion that Kowalchyk's suggestion of anger management classes was coercive. But DiGiambattista states that the "mere mention of counseling" alone is not automatically an improper

---

[16] Thomas, 22 N.Y.3d at 638.
[17] Miranda v. Arizona, 384 U.S. 436, 457, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
[18] Miranda, 384 U.S. at 455-57.
[19] 442 Mass. 423, 813 N.E.2d 516 (2004) (holding that a combination of trickery and implied promises made the confession involuntary).

suggestion of leniency undermining voluntariness.[20]   Although Kowalchyk suggested that if Ash took anger management classes there was a possibility of reunification with the infant, she did not make it seem like a certainty or make any promises.   Thus, the fact that Kowalchyk used minimization and suggested that Ash take anger management classes in an effort to reunite with his son does not show that she coerced Ash into confessing.

Ash also claims that Kowalchyk coerced his confession because she interviewed him for three hours and asked questions that made him emotional.   In Spano v. New York,[21] the United States Supreme Court held that officers coerced Spano's confession with police conduct.   Many officers questioned Spano for eight straight hours, beginning in the early evening and going through the night.[22]   The police ignored Spano's request for an attorney and also used a close friend to interrogate him.[23]   By contrast, in Cunningham v. City of Wenatchee,[24] the Ninth Circuit Court of Appeals held that the officer's conduct was not coercive.   The officer interrogated Cunningham for eight hours and never refused to give Cunningham a break for food or water.[25]   The officer never yelled or threatened Cunningham.[26]   The officer asked questions that may have "unsettled"

---

[20] DiGiambattista, 442 Mass. at 439.
[21] 360 U.S. 315, 324, 79 S. Ct. 1202, 3 L. Ed. 2d 1265 (1959).
[22] Spano, 360 U.S. at 322.
[23] Spano, 360 U.S. at 323.
[24] 345 F.3d 802 (9th Cir. 2003).
[25] Cunningham, 345 F.3d at 810.
[26] Cunningham, 345 F.3d at 810.

Cunningham, but "mere emotionalism and confusion do not invalidate confessions."[27]

We see this case is most similar to Cunningham. Kowalchyk interrogated Ash for only three hours. Like Cunningham, she interviewed Ash during regular business hours and told him he could use the bathroom as needed. Unlike Spano, Kowalchyk was the only interviewer, she did not threaten him or ignore any request for an attorney, and Ash was not in custody. Kowalchyk never tried to intimidate Ash but, alternatively, tried to put him at ease by explaining what would take place during the interview. Kowalchyk did not raise her voice, remained calm throughout the interview, and did not stop Ash from talking. She repeatedly told Ash that he was free to leave at any time. Kowalchyk asked Ash if he was too tired to take the examination. He replied, "I can take it." Thus, substantial evidence supports the trial court's finding that Kowalchyk's conduct does not show that she coerced Ash into confessing.

Because Ash's confession was voluntary, the State did not violate his Fourteenth Amendment rights.

Next, Ash asserts that the police violated his Fifth Amendment protection against self-incrimination when they continued to question him after he invoked his right to remain silent. In Miranda v. Arizona,[28] the Supreme Court of the United

---

[27] Cunningham, 345 F.3d at 810.
[28] 384 U.S. 436, 444-45, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

States held that when a person is in custody and asserts his right to remain silent, he also has the right to an attorney and the right to have police questioning halted. Thus, to receive these additional protections, a person must be in custody.[29] Custody, as defined in Miranda, means that the person has been "deprived of his freedom of action in any significant way."[30] But when a person asserts his right to remain silent when he is not in custody, a court presumes any subsequent statements are voluntary.[31] "When a defendant is not in custody, he is in control, and need only shut his door or walk away to avoid police badgering."[32] Here, Ash was not in custody. This means that Miranda's protections do not apply, and it is inconsequential whether he validly invoked his right to remain silent.

The police did not violate Ash's Fifth Amendment protection against self-incrimination.

### Insufficient Findings

Ash originally asserted that reversal was required because the trial court failed to enter written findings of fact and conclusions of law after the stipulated bench trial. But this claim became moot when the trial court later entered written findings of fact and conclusions of law. Ash asserts now that the trial court's

---

[29] Montejo v. Louisiana, 556 U.S. 778, 795, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009).

[30] Miranda, 384 U.S. at 444.

[31] State v. Sargent, 111 Wn.2d 641, 648, 762 P.2d (1988) ("Once a person is taken into custody, the presumption of voluntariness disappears.").

[32] Montejo, 556 U.S. at 795.

findings are insufficient to permit appellate review because they contain no facts supporting the court's conclusion that he assaulted his son.

Trial courts are required to enter written findings of fact and conclusions of law after a bench trial.[33] The findings should include the elements of each crime separately and specify the factual basis for each.[34] The findings of fact do not need to address every contention made by the parties but must be sufficient to inform the appellate court how the trial court decided all material issues.[35] But if the trial court fails to enter sufficient findings and conclusions, it is harmless error if the trial court's oral findings are sufficient to permit appellate review.[36] Otherwise, a reviewing court must remand for entry of sufficient findings.[37]

Here, Ash does not cite legal authority showing that the trial court's findings from his stipulated bench trial were insufficient to support his conviction. A court should "not consider claims insufficiently argued by the parties."[38] Ash has shown no prejudice from the delayed entry, and the trial court's findings are sufficient to permit meaningful appellate review of the issues raised.

---

[33] CrR 6.1(d).
[34] State v. Denison, 78 Wn. App. 566, 570, 897 P.2d 437 (1995).
[35] Daughtry v. Jet Aeration Co., 91 Wn.2d 704, 707, 592 P.2d 631 (1979).
[36] State v. Smith, 145 Wn. App. 268, 274, 187 P.3d 768 (2008).
[37] Daughtry, 91 Wn.2d at 711.
[38] State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990).

## CONCLUSION

Because substantial evidence supports the challenged trial court findings about Ash's confession and those findings support the legal conclusion that this confession was admissible, we affirm Ash's conviction.

Leach, J.

WE CONCUR:

Mann, J.

Schindler, J.