IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35642-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JESSE M. YOUNG, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Jesse Young appeals his convictions for two counts of first

degree rape of a child and one count of first degree child molestation. The errors he

assigns are either unpreserved, are not demonstrable in the trial record, or are

unsupported by legal authority or analysis—and some suffer from multiple infirmities.

We affirm.

FACTS AND PROCEDURAL BACKGROUND

Jesse Young's then nine-year-old niece, Eva,[1] was seeing a counselor for behavior

problems when she revealed that Mr. Young had touched her inappropriately. She told

---

[1] "Eva" is a pseudonym. *See* General Order of Division III, *In Re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), http://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp &ordnumber=2012_001&div=III.

her counselor that on occasions when she stayed overnight with her grandparents, Mr.

Young had touched her vaginal area with his hand.  She later reported that he had also

touched her with his penis.

The counselor reported the alleged abuse to Child Protective Services and the

police.  Eva met with a child forensic interviewer, and a few weeks later Detective Stormi

Koerner of the Spokane Police Department arranged to meet with Mr. Young.  Detective

Koerner had learned that Mr. Young was developmentally delayed and was aware that

because of his mental limitations, a different interview approach might be required.  She

arranged for Detective Elise Robertson, who had some training and experience

interviewing developmentally delayed witnesses, to participate.

The interview, which was videotaped, began with the detectives first explaining

and then reading Mr. Young his *Miranda*[2] rights, after which he signed a waiver of the

rights.  Asked if he had any mental condition, he said that he had always had a "slow

learning disability" and had not been able to talk when he was little.  (Mr. Young was 20

years old at the time of the interview.)  Detective Robertson then explained that she was

going to ask him some questions to assess how capable he would be in understanding and

providing information during the interview.  Her initial questions addressed his

understanding of many matters relating to sexual relations, the language he was familiar

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

with to describe sexual matters, and his understanding of the legal process. The questions she asked during this initial portion of the interview were sample questions from printed guidance she had received from the county prosecutor's office.

The entire interview of Mr. Young lasted around two hours. By its conclusion, Mr. Young had admitted that Eva had seen him watching pornography, and that he had touched her inappropriately about four times. He said he inserted his finger into her vagina one time. He said another time he tried to have sexual intercourse with her but her vagina was too small. At the suggestion of the detectives, Mr. Young wrote a letter of apology to Eva.

Mr. Young was charged with two counts first degree rape of a child and one count of first degree child molestation. Each count included an aggravating circumstance that it was part of an ongoing pattern of sexual abuse of the same minor victim manifested by multiple incidents over a prolonged period of time.

After charges were filed, Mr. Young's lawyer promptly moved for a court-ordered competency examination under RCW 10.77.060, advising the court that he had a good faith belief that Mr. Young may be developmentally disabled. The order Mr. Young's lawyer presented for entry by the court indicated that the expert performing the evaluation must "qualify as a developmental disabilities professional." Clerk's Papers (CP) at 11.

The evaluation ordered by the court was completed by Daniel Lord-Flynn, Ph.D., who filed a nine page report in which he expressed the opinion that Mr. Young was competent to stand trial. He also devoted a portion of his report to Mr. Young's "capacity to waive Miranda and susceptibility to false confession," which he stated was "at the request of the defense attorney." CP at 194. Dr. Lord-Flynn expressed his opinion "that Mr. Young likely had the capacity to understand and knowingly waive his Miranda Rights on the date of his questioning by police on April 2, 2015." CP at 201.

Approximately a week before trial, the court held a CrR 3.5 hearing on the admissibility of Mr. Young's statements during his interview by Detectives Koerner and Robertson. The State called as witnesses Dr. Lord-Flynn and Detective Robertson. The court also reviewed the videotape of Mr. Young's interview.

Dr. Lord-Flynn testified to the reasons he arrived at his opinion that Mr. Young likely had the capacity to understand and knowingly waive his *Miranda* rights. Detective Robertson described why and how her interview approach was modified in light of Mr. Young's developmental delays. She testified that the questions she used to assess Mr. Young's level of understanding during the first part of the interview were sample questions from the county prosecutor's guidance document. She explained that she had never gone through the entire 18 pages of sample questions in conducting an interview, "because what I've found is when you get about half way through, there's kind of like it

almost starts to feel like a test instead of, you know, a rapport-building process." Report

of Proceedings (RP) at 176.

The court found Mr. Young's statements to be admissible and the case proceeded

to a 5-day jury trial. In the defense case, Mr. Young called Dr. Richard Leo, an expert on

police interrogation techniques. He testified to techniques used during Detectives

Koerner's and Robertson's interview that could be coercive, and how, given Mr. Young's

vulnerabilities, they could have led to a false confession.

The jury found Mr. Young guilty as charged and found the aggravating factor of

an ongoing pattern of abuse. He appeals.

## ANALYSIS

Mr. Young makes three assignments of error. He contends the trial court erred (1)

by finding that he was competent based on the report and testimony of Dr. Lord-Flynn,

who he asserts is not qualified as a developmental disabilities professional, and (2) by

entertaining opinion testimony at the CrR 3.5 hearing from unqualified witnesses. His

third assignment of error states he received ineffective assistance of counsel when his

trial lawyer failed to challenge Dr. Lord-Flynn's qualifications or retain defense experts.

The assignments of error and argument fail to observe three fundamental

principles of appellate review. First, for error to be considered, it must be preserved.

Errors not raised in the trial court will generally not be considered for the first time on

appeal. RAP 2.5(a). The reason for this rule is to afford the trial court an opportunity to

correct errors as they are raised, thereby preserving the use of judicial resources. *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). An exception exists for constitutional error, but only if it is "manifest," which requires a showing of actual prejudice. RAP 2.5(a)(3); *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007).

Second, for an error to be considered on direct appeal, it must be demonstrable in the record established in the proceedings below. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate procedure for doing so is by filing a personal restraint petition that is supported by the otherwise missing evidence. *Id.*

Third, a claim of error must be supported by argument that includes citations to legal authority. RAP 10.3(a)(6). We do not consider claims that are unsupported by legal analysis. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

We turn to Mr. Young's assigned errors and why they fail.

I.    DR. LORD-FLYNN'S ASSERTED LACK OF QUALIFICATIONS IS RAISED FOR THE FIRST TIME ON APPEAL AND IS NOT DEMONSTRABLE FROM THE TRIAL RECORD

Mr. Young first argues that his convictions must be vacated and the case remanded because, he asserts, Dr. Lord-Flynn was not qualified as a developmental disabilities professional.

Whenever there is reason to doubt a defendant's competency, RCW 10.77.060(1)(a) requires the trial court to order a qualified expert or professional to evaluate and report on the defendant's mental condition. "If the court is advised by any party that the defendant may have a developmental disability, the evaluation must be performed by a developmental disabilities professional." RCW 10.77.060(1)(b). A "developmental disabilities professional" is "a person who has specialized training and three years of experience in directly treating or working with persons with developmental disabilities and is a psychiatrist or psychologist, or a social worker, and such other developmental disabilities professionals as may be defined by rules adopted by the secretary." RCW 10.77.010(8).

Mr. Young did not object in the trial court that Dr. Lord-Flynn was not qualified to perform the competency evaluation. If he had objected and Dr. Lord-Flynn was not qualified, the evaluation could easily have been reassigned. If an error occurred, it was not preserved.

Additionally, Mr. Young points to nothing in the trial record showing that Dr. Lord-Flynn was *not* a developmental disabilities expert.[3] To demonstrate that an error

---

[3] The State directs our attention to a supplemental clerk's paper, a curriculum vitae (CV) for Dr. Lord-Flynn, that provides the following list of his duties at Eastern State Hospital:

Sanity Commission services including evaluations of patients per court order for competency and sanity. Services in *specialties* of:

occurred, Mr. Young would need to prove that the doctor lacked the required training and experience. That would require presenting evidence outside the trial record that can only be presented in support of a personal restraint petition, not direct review.

II.     NO OBJECTION TO DR. LORD-FLYNN'S OR DETECTIVE ROBERTSON'S TESTIMONY WAS MADE AT THE CRR 3.5 HEARING

Mr. Young next challenges the trial court's ruling at the conclusion of the CrR 3.5 hearing that the interview of Mr. Young was admissible. He does not assign error to any of the trial court's 22 findings of fact, however, which are verities on appeal. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997); RAP 10.3(g) (requiring separate assignments of error to each challenged finding of fact).

Mr. Young argues, instead, that it was error for the trial court to "permit" Dr. Lord-Flynn and Detective Robertson to testify on the topic of the knowing and voluntary character of his waiver of *Miranda* rights. He contends that both were unqualified. Br. of Appellant at 13. He also argues it was error for the trial court to "permit" the State to establish Detective Robertson's use of guidance material from the prosecutor's office, which he argues gave "false and undue credibility" to her testimony. *Id.* at 12. No

---

neuropsychology; minority and cultural consultation and training; *developmental disabilities.* Administer and interpret psychological and neuropsychological tests. Conduct involuntary treatment evaluations. Provide supervision to psychologist trainees or others as assigned.

CP at 191 (emphasis added). Because the CV was filed in the superior court in July 2018, well after the CrR 3.5 hearing and trial, and even after Mr. Young had filed his opening brief, we will not consider it. *See* Title 9 RAP.

objection was made during the CrR 3.5 hearing to the witnesses' qualifications or their testimony. If errors occurred, they were not preserved.

III.   MR. YOUNG FAILS TO DEMONSTRATE THAT ANY DEFICIENT PERFORMANCE OCCURRED

Finally, Mr. Young argues that his trial lawyer provided ineffective assistance of counsel by failing to challenge Dr. Lord-Flynn's qualification as a developmental disabilities professional and failed to retain defense experts to testify that Mr. Young was incompetent to stand trial and was unable to knowingly waive his *Miranda* rights.

To demonstrate ineffective assistance of counsel, a defendant must show two things: "(1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *McFarland*, 127 Wn.2d at 334-35 (emphasis omitted). When a claim can be disposed of on one ground, this court need not consider both. *Strickland v. Washington*, 466 U.S. 668, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To demonstrate that it was deficient performance to fail to challenge Dr. Lord-Flynn's qualification as a developmental disabilities professional, Mr. Young must show

No. 35642-6-III
*State v. Young*

that the challenge would be successful, viz., that Dr. Lord-Flynn lacked the qualification. Mr. Young is unable to make that showing on direct appeal.

To demonstrate that it was deficient performance not to retain defense experts to challenge Mr. Young's competence to stand trial and his ability to knowingly waive *Miranda* rights, Mr. Young must, at a minimum, present evidence that qualified experts have those opinions and would have been available to testify. Even then, an issue of whether Mr. Young's lawyer was pursuing a different and legitimate strategy would remain. Here again, since Mr. Young needs evidence outside the record to demonstrate these claimed errors, the appropriate procedure is a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

                                                              Siddoway, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Korsmo, J.

10